```
           UNITED   STATES   DISTRICT   COURT
              EASTERN DISTRICT OF LOUISIANA
```

SCHWANDA GRAPS ET AL                                    CIVIL ACTION

versus                                                  NO. 05-0207

BERTRAND BUTLER ET AL                                   SECTION: E/2

## RULING ON MOTION

Defendant, the City of New Orleans[1] (the "City") filed a motion for summary judgment. Record document #63. The plaintiffs oppose the motion. After consideration of the briefs, the record, the evidence and the law, and for the following reasons, the motion is granted.

## BACKGROUND

This case arises out of an accident that occurred on Sunday, March 21, 2004, in the northbound lanes of Martin Luther King Boulevard while a Mardi Gras Indian parade and Second Line was passing in the southbound lanes. Two minor children were injured when they were struck by a vehicle driven by an F.B.I. agent, Stephen Slote. Plaintiffs, the mothers of the injured children, sued the City for failure to protect the children.

The following facts are undisputed. Martin Luther King Boulevard consists of two lanes of traffic in each direction divided by a wide grassy neutral ground. For the past 25 years, Mr. Bertrand Butler has organized and lead a group of Mardi Gras

---

[1] The only other defendant remaining in this case is the United States of America. Federal jurisdiction is based on the federal tort claim.

Indians through a registered non-profit corporation entitled R.E.A.L. (Recreating the Environmental Ability to Live).  He applied for and received a parade permit for an annual "Super Sunday" parade from the New Orleans Police Department (the "Department") several months in advance of the scheduled parade date.  The Department issued a "Special Events Assignments-Special Detail Roster" that identified six New Orleans police officers assigned to the parade.  City Memorandum, Ex. "A".  According to the Roster, one officer was assigned "as the lead unit to coordinate the movement of the parade", one was assigned "as the tail unit to protect the rear of the parade", and four assigned "police motorcycles for traffic control, escort, and security."  Id.  At approximately 2:56 p.m. (based on the Incident Report), the parade was passing in the southbound lanes of Martin Luther King Blvd., but vehicular traffic continued to flow on the northbound lanes.  Spring Wilson, the minor daughter of Schwanda Graps, and Derrick Price, the minor son of Charlene Price, attempted to cross the northbound lanes of Martin Luther King Blvd. in the vicinity of Clara Street when they were struck by the vehicle driven by Agent Slote.  The New Orleans police officers had no contact with the children prior to the accident.

## ANALYSIS

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the movant

is entitled to judgment as a matter of law.  Fed. R. Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 3d 265 (1986).  An issue is material if its resolution could affect the outcome of the action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See* Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).  However, once a moving party properly supports a motion for summary judgment, the nonmoving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 311-12 (5th Cir. 1999), *quoting* Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047-48 (5th Cir. 1996).  The nonmoving party cannot satisfy its burden with "unsubstantiated assertions" or "conclusory allegations."  Id.

Louisiana law applies in this federal tort claim case.  Robin v. United States, 2006 WL 2038169 *1 (E.D.La.) *citing* Artez v. United States, 604 F.2d 417, 429 (5th Cir. 1979).  In Louisiana, a duty-risk analysis applies to determine whether a defendant, including a police officer, was negligent in causing a plaintiff's injury.  Blair v Tynes, 621 So.2d 591, 595 (La. 1993); Jenkins v. Fanguy, 946 So.2d 201, 205 (La.App. 4 Cir. 11/15/06), *writ denied*,

949 So.2d 426 (La. 2/16/07).  To succeed on a negligence claim, a plaintiff must prove four separate elements: (1) was the conduct in question a substantial factor in bringing about the harm to the plaintiff (the cause-in-fact element); (2) did the defendant owe a duty to the plaintiff (the duty element); (3) did the defendant breach that duty to the plaintiff (the breach of duty element); and (4) was the risk and the harm caused within the scope of protection afforded by the duty breached (the scope of protection element).  Blair, 621 So.2d at 565; Jenkins, 946 So.2d at 205, *citing* Mathieu v. Imperial Toy Corp., 646 So.2d 318, 322-23.  Finally, the plaintiff must have incurred actual damages.  Blair, at id.; Pinsonneault v. Merchants & Farmers Bank & Trust Company, 816 So.2d 270, 275-76 (La. 2002).  A plaintiff's failure to prove any single element is fatal to recovery.  Jenkins, at id.

The initial question in any negligence action is whether the defendant owed plaintiff a duty; whether the duty is owed is a question of law.  Id.; Pinsonneault, 816 So. 2d at 276.  Whether the duty was breached is a question of fact.  Jenkins, at id. (citations omitted).  The City argues that the police officers owed no duty of care to the plaintiffs;[2] plaintiffs, citing Blair, *supra*, argue that the police officers did owe a duty of care to

---

[2] It is not necessary to address the parties' arguments regarding the plaintiffs' alleged breach of LSA-R.S. 32:213(A) and (B), traffic laws concerning pedestrians crossing a street.  The facts regarding precisely where the children crossed the street are disputed, and the matter is decided on other grounds.

-4-

protect pedestrians, and they breached that duty when they failed to formulate a proper traffic plan to protect pedestrians from oncoming traffic.

In Blair, a pedestrian was killed and another injured when they were struck by a pick-up truck while crossing a state highway to the parking lot where their car was parked after attending a fund raising event.  The Washington Parish Sheriff's Department had assigned five deputies to direct traffic at the event.  At the time of the accident, the deputies were stationed at various locations - one on the north side of the shoulder of the highway directing traffic at the exit of the North Parking Lot adjacent to the facility, one on the south side of the shoulder directing traffic at the exit to the South Parking Lot, one just west of the Pearl River bridge directing traffic coming off of the bridge, and another in front of the South Parking Lot directing cars onto the highway.  A sheriff's vehicle with flashing lights was parked on the north side of the shoulder near the facility.  When the plaintiffs had arrived at the event a deputy directed them to park in the South Parking Lot, and when they were ready to cross the highway, a deputy standing in the middle of the highway directed them across the highway.  Id., at 594.

The plaintiffs sued the Sheriff's Department, alleging that the deputies owed a duty of care to pedestrian invitees attending the event.  After the appellate court reversed the trial court's

judgment, the Louisiana Supreme Court reinstated the trial court's ruling, and articulated the duty of law enforcement officers to pedestrians as follows:

> La.R.S. 32:5[] vests all law enforcement officers of the state or its political subdivisions with authority to direct, control or regulate traffic and enforce the provisions of the Traffic Code and regulations of the Department of Public Safety. This statutorily imposed duty is of such great significance that *under certain circumstances* a motorist or pedestrian is relieved of liability for causing an accident if s/he acted in accordance with directions of a traffic control officer.  Stakes v. Otterstater, 489 So.2d 1093 (La.Ct.App. 3rd Cir. 1986).
> ....
> The legislature has given law enforcement officers the exclusive power to regulate traffic and the public has a corresponding obligation to follow traffic regulations. Law enforcement officers are duty bound to exercise this power reasonably to protect life and limb and to refrain from causing injury or harm. Lejeune v. Allstate Ins. Co., 365 So.2d 471 (La. 1978); []. .... [O]ur legislature has determined that "traffic" control encompasses not only the direction of vehicular traffic, but also the direction of pedestrian activity.
> ....
> This court has recognized that our law requires extra special protection for pedestrians. Baumgartner v. State Farm, 356 So.2d 400 (La. 1978); Turner v. New Orleans Public Service, 471 Sol2d 709 (La. 1985).

Blair, 595-596 (footnote and other citations omitted, emphasis supplied.)  The Supreme Court affirmed the trial court's finding that "the failure to formulate a proper traffic control plan and the failure to assist pedestrians across the highway was a substantial factor in producing the situation, in light of the fact

that the presence of the deputies created what pedestrians believed was a 'zone of safety'." Blair, at 597. It further held that the sheriff deputies' duty to direct traffic in connection with the event encompassed a duty to direct pedestrian activity. Id.

In this case, Agent Stephen Slote (City Ex. "B"), Spring Wilson (City Ex. "C"), one of the injured children, and a witness, Sandra Morris (City Ex. "D"), testified by deposition. Ms. Morris testified that she saw the children dart out into the street from between cars parked along the sidewalk on the northbound side of Martin Luther King Blvd. Ex. "D", pp. 9, 14, 19, 27, 40. Spring Wilson testified that she was hit by the car when she ran across the street to reach the Second Line. Ex. "C", pp. 6, 9, 12. Agent Slote testified that he did not see the children run into the street, but saw an object out of the corner of his eye and immediately felt the impact on his vehicle. City Ex. "B", pp. 19, 23.

The New Orleans police officers had been directed to coordinate the movement of the parade, to protect the rear of the parade, and for traffic control, escort, and security of the parade along the southbound lanes of Martin Luther King Blvd. City Ex. "A". This duty encompassed directing and protecting pedestrian activity, both parade participants and attendees, along the southbound lanes of Martin Luther King Blvd. There has been no allegation that the assigned police officers did not do so. Under these circumstances, the "zone of safety" and the duty of extra

special protection owed to pedestrians was limited to the southbound lanes of Martin Luther King Blvd. while the parade was passing.  It did not encompass the northbound lanes where traffic continued to flow.

The court finds that City owed no duty to the plaintiffs. Because there are no genuine issues of material fact in dispute, the City of New Orleans is entitled to summary judgment as a matter of law.  Accordingly,

**IT IS ORDERED** that the City of New Orleans' motion for summary judgment is **GRANTED,** dismissing with prejudice plaintiffs Schwanda Graps' and Charlene Price's claims against the City.

New Orleans, Louisiana, this 29th day of August, 2007.

_____
MARCEL LIVAUDAIS, JR.
Senior United States District Judge